**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3776
_____

UNITED STATES OF AMERICA

v.

MAXIMUS PROPHET, MARK L. FERRARI,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 3-07-cr-00025-001)
District Judge: Honorable Kim R. Gibson

_____

Argued November 12, 2020

(Opinion Filed: March 3, 2021)

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit
Judges*

Laura S. Irwin
Haley F. Warden-Rodgers (Argued)
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

Counsel for Appellee

James S. Ballenger
Zev Klein[*] (Argued)
Anna C. Pepper[*] (Argued)
University of Virginia Law School
580 Massie Road
Charlottesville, VA 22903

Counsel for Appellant

O P I N I O N

RENDELL, *Circuit Judge*

Maximus Prophet (a/k/a Mark Ferrari) appeals the District Court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255 and, in the alternative, his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Prophet challenges the sentencing court's application of a two-point Guidelines enhancement for distribution of child pornography. He argues that the enhancement should not apply because in 2016 the United States Sentencing Commission adopted

[*] Eligible law student under 3d Cir. L.A.R. 46.3 (2011).

Amendment 801, limiting the enhancement to those who "knowingly engaged in distribution," and there was no evidence in his case that he knowingly engaged in distribution. Prophet argues that Amendment 801 is a clarifying amendment which should apply retroactively to him. He seeks a resentencing under § 2255 or § 2241 on that basis. The District Court concluded that Amendment 801 is not retroactive and denied Prophet's motion and petition for habeas relief.

We issued a certificate of appealability on four issues but can decide this case based only on the first issue, namely whether Amendment 801 is a clarifying amendment that can be raised and retroactively applied under § 2255. Because we conclude that it is not retroactive and will affirm the District Court's order on that basis, we need not address the other issues which explore the cognizability of the claim under § 2255 and § 2241.[1]

The government moved to dismiss the appeal for mootness because Prophet was released from prison in 2019 and is now serving a fifteen-year term of supervised release. This motion has been fully briefed and is ripe for review. We conclude that Prophet's case is not moot and will deny the government's motion to dismiss.

---

[1] We take this opportunity, however, to commend the parties for thorough briefing and excellent oral arguments on these nuanced issues.

## I.

## A.

Prophet pleaded guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4) and eleven counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2). The sentencing court applied a two-level enhancement for distribution under U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F) (U.S. Sentencing Commission 2007) because of Prophet's use of LimeWire, a peer-to-peer file sharing network. Prophet has consistently maintained that he did not know that LimeWire made his files available to other LimeWire users. The sentencing court decided that his involvement in LimeWire was enough to trigger the enhancement. The court determined that the enhancement was warranted because "the files found on [Prophet's] computers were available for viewing by other members of the network." App. 23. The court explained that the fact that his files were available for viewing was equivalent to posting the material on a website for public viewing, which was the example provided in Application Note 1 of U.S. Sentencing Guidelines Manual § 2G2.2 (U.S. Sentencing Commission 2007), the version of the Guidelines applicable at the time. The court also noted that "distribution" "is not restricted to acts with intent only." App. 23.

The court applied the 2007 Sentencing Guidelines and determined that Prophet's offense level was 34. This resulted in a Guidelines range of 151 to 188 months. The Guidelines authorized a supervised release term of at least two years for each of the twelve counts, but the accompanying policy

4

statement recommended a term of life because the offense of conviction was a sexual offense.

The court sentenced Prophet to 120 months' imprisonment for Count One, 168 months' imprisonment for Counts Two through Twelve, to be served concurrently, and fifteen years of supervised release. The court noted that the term of supervised release

> is above the [G]uideline range but not above the maximum permitted by law, and is warranted as it is apparent that you are in need of counseling regarding your appetite for child pornography, and 15 years of supervised release will ensure that you are able to reintegrate successfully and productively into society after your term of imprisonment.

App. 34. Prophet appealed his sentence and we affirmed. *United States v. Prophet*, 335 F. App'x 250 (3d Cir. 2009).

Prophet moved to vacate his sentence in 2015 based on our decision in *United States v. Husmann*, 765 F.3d 169 (3d Cir. 2014). In *Husmann*, we held that the offense of distribution of child pornography under 18 U.S.C. § 2252(a)(2) based on use of a peer-to-peer network requires evidence that another person accessed the material. *Id.* at 176. The magistrate judge construed Prophet's motion as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, noting that a motion to vacate would be untimely and Prophet had not "present[ed] anything that would statutorily or equitably toll the one-year limitations period in 28 U.S.C. § 2255(f)." App. 55. The magistrate judge concluded that Prophet's petition

5

must be dismissed because in *Husmann* we addressed the distribution requirement in the Guidelines enhancement and concluded that it applied to broader conduct than the statutory definition. The district court adopted the magistrate judge's report and recommendation, denied Prophet's petition, and we affirmed. We explained that *Husmann* did not apply to Prophet because it involved the narrower crime of distribution, not the enhancement under the Sentencing Guidelines. *United States v. Prophet*, 644 F. App'x 128, 129 (3d Cir. 2016). We explained, "Under the applicable sentencing guideline, Prophet's act of merely logging in to a file-sharing network qualified as distribution." *Id.*

At or around the time that we decided *Husmann*, there was a split among the circuits as to whether the Guideline enhancement under § 2G2.2(b)(3)(F) required a finding of mens rea. The Second, Fourth, and Seventh Circuits interpreted the Guideline to require knowledge. *See United States v. Robinson*, 714 F.3d 466, 468 (7th Cir. 2013); *United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009). On the other hand, the Fifth, Tenth, and Eleventh Circuits held, "the language of § 2G2.2(b)(3)(F) unambiguously does not contain a scienter requirement." *United States v. Baker*, 742 F.3d 618, 622 (5th Cir. 2014); *accord United States v. Ray*, 704 F.3d 1307, 1312 (10th Cir. 2013); *United States v. Creel*, 783 F.3d 1357, 1360 (11th Cir. 2015).

The United States Sentencing Commission resolved this debate by promulgating Amendment 801, effective on November 1, 2016. Amendment 801 revised the language of U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F) from "If the offense involved . . . distribution other than distribution

6

described in subdivisions (A) through (E)," to "*If the defendant knowingly engaged in* distribution, other than distribution described in subdivisions (A) through (E)." U.S. Sent'g Guidelines Manual app. C, amend. 801 (U.S. Sent'g Comm'n 2016) (emphasis added).

**B.**

Prophet filed a second motion seeking relief under § 2255 and in the alternative a petition for habeas corpus under § 2241 in October 2017. Prophet argued that Amendment 801 should apply retroactively to his sentence, and as a result he is entitled to be resentenced. The Magistrate Judge reasoned that although Amendment 801 would require a sentencing court today to make findings as to Prophet's knowledge, it is not a retroactive amendment because "[i]n the absence of an express retroactivity provision, *see* United States Sentencing Guideline § 1B1.10(d), amendments to the Guidelines do not apply retroactively." App. 8. The Magistrate Judge also noted that even if he were to conclude that Amendment 801 was a clarifying amendment and therefore is retroactive, relief under § 2255 would be precluded because the motion to vacate was untimely.

Moreover, the Magistrate Judge concluded, Prophet's argument for relief under § 2241 based on *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997) was unavailable because § 2241 is available only when a motion to vacate is barred for procedural reasons and subsequent authority has negated the criminal liability for the conduct. Because Amendment 801 did not negate Prophet's criminal liability, the Magistrate Judge decided that *Dorsainvil* was inapplicable.

7

The District Court adopted the Magistrate Judge's report and recommendation in full and denied Prophet's motion to vacate. Prophet timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2255. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).[2] *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020), *cert. denied*, No. 20-5983, 2020 WL 6551899 (U.S. Nov. 9, 2020). We review legal conclusions de novo and factual findings for clear error. *Id.*

The government has moved to dismiss Prophet's appeal as moot because he is no longer imprisoned. However, because Prophet is now serving the supervised release portion of his sentence, we conclude that Prophet's case is not moot. We will address this issue before turning to the merits of Prophet's appeal.

## A.

Under Article III of the Constitution, a federal court may adjudicate "only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. The parties must continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis*, 494 U.S. at 477–78) (cleaned up).

---

[2] Cognizability here does not impact our jurisdiction. *See United States v. Doe*, 810 F.3d 132, 149 (3d Cir. 2015).

"[A] live case or controversy that a court can remedy arises when a defendant challenges the sentence he is currently serving . . . ." *United States v. Jackson*, 523 F.3d 234, 241 (3d Cir. 2008). Prophet is challenging the validity of his sentence, "which includes his term of imprisonment *and* his term of supervised release." *United States v. Scripps*, 961 F.3d 626, 631 (3d Cir. 2020). Although he has already served his prison term, Prophet argues that because his prison term was longer than it should have been based on the improper enhancement, on resentencing the District Court would likely reduce his period of supervised release.

The government bases its argument on cases that consider whether certain collateral consequences might render a case not moot.[3] We need not address the likelihood of

---

[3] The government relies on *Burkey v. Marberry*, 556 F.3d 142 (3d Cir. 2009), *Spencer v. Kemna*, 523 U.S. 1 (1998), and *United States v. Juvenile Male*, 564 U.S. 932 (2011), but they are inapposite. Prophet's circumstances are distinct from those in *Burkey*, where the defendant was not challenging his sentence, but was instead challenging the BOP's execution of its own early release policy. *Burkey*, 556 F.3d at 144–48. So we explained: "[Burkey's] challenge was more remote, attacking only what the BOP had done, and urging it as the basis for the sentencing court to now afford him relief against an indisputably valid term of supervised release." *Id.* at 148. In *Spencer*, the petitioner challenged his parole revocation, but he had completed the entire term of imprisonment resulting from the parole revocation. *Spencer*, 523 U.S. at 3, 8. In *Juvenile Male*, the respondent challenged conditions of supervision to which he was no longer subject. *Juvenile Male*,

9

collateral consequences where the defendant is challenging the sentence he is serving. *See Jackson*, 523 F.3d at 241–42. We have explained that when an erroneous Guidelines enhancement "would likely merit a credit against [the defendant's] period of supervised release for the excess period of imprisonment," the case is not moot. *United States v. Cottman*, 142 F.3d 160, 165 (3d Cir. 1998).

We reaffirmed this in *United States v. Jackson* and explained, "the possibility of a credit for improper imprisonment against a term of supervised release is sufficient to give us jurisdiction." 523 F.3d at 241. In *Jackson*, the defendant had completed her term of imprisonment and was serving her remaining term of supervised release. *Id.* at 237. Jackson's initial argument on appeal was that she should have been sentenced to probation rather than any term of imprisonment. *Id.* at 242. But she acknowledged that any excess time in prison could not be "credited" against her period of supervised release. *Id.* at 242 n.4. Instead, she argued that the only issue left for this Court was "whether a three year period of supervised release [was] reasonable." *Id.* at 242. We agreed and explained that her case was not moot because she was "currently serving a term of supervised release, and [] her challenge is to whether that term of supervised release is reasonable." *Id.* at 242. The same is true for Prophet.[4] *See*

---

564 U.S. at 934–37. None of these cases involved a challenge to an ongoing sentence.

[4] Insofar as the government argues that credit against a term of supervised release conflicts with *Johnson v. United States*, 529 U.S. 53 (2000), this ignores the Supreme Court's language in *Johnson*. The Supreme Court acknowledged that even though Johnson was not entitled by statute to a reduction in his term

*Scripps*, 961 F.3d at 631 ("Although Scripps has completed his period of imprisonment, he is currently serving his term of supervised release. Accordingly, because Scripps is directly challenging 'the sentence he is currently serving, issues of mootness do not arise.'" (quoting *Jackson*, 523 F.3d at 241)). Thus, the instant appeal is not moot.

### III.

Prophet argues that because Amendment 801 is a clarifying amendment that applies retroactively, he should be resentenced so the District Court can determine whether he knowingly engaged in distribution, and if not, consider reducing his period of supervised release. Prophet relies on our decision in *United States v. Marmolejos*, where we recognized "a post-sentencing amendment to a sentencing guideline or its comments should be given effect if it 'clarifies' the guideline or comment in place at the time of sentencing. If, however, the amendment effects a substantive change in the law, the defendant does not [receive] the benefit of the [change]." 140 F.3d 488, 490 (3d Cir. 1998).

We had occasion to explore this distinction in *Marmolejos*. Marmolejos was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. *Id.* at 489.

---

of supervised release, "equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term." *Id.* at 60. We have continued to recognize that "a likely credit against a defendant's term of supervised release for an excess term of imprisonment still remains valid after *Johnson.*" *Jackson*, 523 F.3d at 239; *accord id.* at 240.

He negotiated to sell 5.00 kg of cocaine but only delivered 4.96 kg. *Id.* Based on Application Note 12 to U.S. Sentencing Guidelines Manual § 2D1.1 (U.S. Sentencing Commission 1990), which instructed courts to use the weight under negotiation *in an uncompleted distribution*, Marmolejos was sentenced based on the 5.00 kg amount—even though his case involved a *completed distribution* of 4.96 kg, not addressed in the commentary. *Id.* at 489–90. This increased his base offense by two levels from what it would have been if he was sentenced for the 4.96 kg amount involved in the completed sale. *Id.* at 489 n.2.

Four years after Marmolejos was sentenced, the Sentencing Commission promulgated Amendment 518, which revised the text of Application Note 12 to read as follows: "In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level *unless the sale is completed and the amount delivered more accurately reflects the scale of the offense*." U.S. Sent'g Guidelines Manual § 2D1.1, Note 12 (U.S. Sent'g Comm'n 1995) (emphasis added). Marmolejos argued that this new language "clarified" the prior Guideline for a completed distribution such as his, so he was entitled to be resentenced. *Marmolejos*, 140 F.3d at 490.

We explained that while "[t]here is no bright-line test," courts determine whether a Guideline amendment is retroactive by evaluating "the language of the amendment, the amendment's purpose and effect, and whether, as a matter of construction, the guideline and commentary in effect at that time is really consistent with the amended manual." *Id.* at 491 (internal citations and quotations omitted).

12

In the case of Application Note 12, the previous version did not address the amount of drugs that a court should consider when sentencing a defendant for a completed drug transaction. *Id.* It only addressed uncompleted transactions. *Id.* We explained, "Thus, the terms of the previous application note were facially ambiguous; the note spoke only to uncompleted deals." *Id.*

The government argued that because Amendment 518 conflicted with how most courts had applied Application Note 12, it necessarily effected a substantive change in the law. We rejected that argument and reasoned:

> [W]hile Amendment 518 may alter the practice of the courts in construing § 2D1.1, and may even reverse the caselaw interpreting Application Note 12, it is the text of the amendment—not the courts' gloss on that text—that ultimately determines whether the amendment is a clarification or a substantive revision.

*Id.* at 492 (footnote omitted).

The government urged that the Commission's explanation that the Amendment "revise[d] the Commentary to § 2D1.1" was illustrative of a substantive change. *Id.* at 493. We rejected this and explained that our own interpretation of the text is controlling. "[T]he mere fact that an amendment is referred to as a clarification or a revision is ordinarily of slight import to our analysis." *Id.* Additionally, we noted that "[i]t 'revises' the commentary in the same way that every amendment revises the commentary—by changing, altering, or

13

modifying the text," but this does not mean that it "revises" the *method* for courts to determine the correct drug quantity under § 2D1.1. *Id.*

We concluded that Amendment 518 was a clarification because it did "not change the method for calculating amounts involved in uncompleted sales, but merely clarifie[d] the proviso for completed ones." *Id.* We explained that "it fills a void and resolves an ambiguity in § 2D1.1 regarding the proper weight of drugs for a court to consider." *Id.*

Here, the text of Amendment 801 adds a mens rea requirement to the actual text of the Guideline, rather than merely the commentary, which suggests that it effected a substantive change. As noted above, we interpreted the prior text to not require a showing of mens rea. *See Prophet*, 644 F. App'x at 129 ("Under the applicable sentencing guideline, Prophet's act of merely logging in to a file-sharing network qualified as distribution."). In contrast to the revision at issue in *Marmolejos*, *see* 140 F.3d at 493, Amendment 801 changed the *method* for applying the enhancement by requiring the court to make findings as to the defendant's knowledge. The amendment in *Marmolejos* did not change the method for applying the enhancement but merely provided guidance where there was none before and which was not inconsistent with the existing guidance. *Id.* at 491–93. Here, Amendment 801 did not fill an explanatory gap, but instead changed the application of the enhancement to require a specific finding of knowledge on the part of the defendant.

As for the purpose of the amendment, the Commission's explanation indicates that Amendment 801 implemented a new substantive requirement. The Commission explained that

14

"Based on testimony, public comment, and data analysis, the Commission determined that the 2-level distribution enhancement is appropriate only in cases in which the defendant knowingly engaged in distribution." U.S. Sent'g Guidelines Manual app. C, amend. 801 (U.S. Sent'g Comm'n 2016). This suggests that the Commission's earlier view was that a finding of knowledge was not required to apply the enhancement, but following "testimony, public comment, and data analysis," the Commission adopted the approach of the courts that had required it. This is supported by the Commission's description of Amendment 801 as "generally adopt[ing] the approach of the Second, Fourth, and Seventh Circuits" which had required a showing of knowledge to apply the enhancement. *Id.* The language "generally adopts" signifies that the amendment is effectuating a change that adds something new. Thus, this is not a situation where an amendment merely implemented "precisely what [the Commission] meant to say (but neglected to) all along." *See United States v. Spinello*, 265 F.3d 150, 162 (3d Cir. 2001). Accordingly, Amendment 801 does more than merely clarify the Commission's previous understanding of the enhancement's applicability.

Prophet argues that the Sentencing Commission's purpose of Amendment 801 was to resolve an ambiguity, and therefore to clarify the Guideline. We disagree. In *Marmolejos* we rejected the government's argument that the Amendment must have effected a substantive change because it conflicted with how most courts were applying the Guidelines. *Marmolejos*, 140 F.3d at 492. We explained that this conflict could also reveal an ambiguity made apparent in the caselaw that a clarifying amendment was intended to resolve. *Id.* In other words, a circuit split as to the meaning or the application

15

of a Guideline, evidencing an ambiguity, is not determinative because resolving the ambiguity could require either a clarification or a substantive change. As such, we are guided by "the text of the amendment—not the courts' gloss on that text," so the fact of a circuit split provides limited guidance here. *See id.*

Amendment 801 had the effect of narrowing the scope of offenders subject to the enhancement, which also points to a substantive change. The absence of a mens rea requirement allowed courts to apply the enhancement based on strict liability, but now the enhancement requires evidence of knowledge. In *United States v. Roberson*, we noted that an amendment was substantive when its effect was to "narrow[] the category of controlled substances subject to enhanced penalties from all forms of cocaine base to a single type, crack." 194 F.3d 408, 418 (3d Cir. 1999). The narrowing of the scope of the enhancement to those with a heightened mens rea similarly suggests a new meaning here that conflicts with the pre-Amendment language.

Moreover, we are not concerned with the Commission's use of the word "clarifying" in its "Reason for Amendment." *See* U.S. Sent'g Guidelines Manual app. C, amend. 801, at 145–46 (U.S. Sent'g Comm'n 2016). As we explained in *Marmolejos*, the Commission's word choice between "clarification" and "revision" "is ordinarily of slight import to our analysis." *Marmolejos*, 140 F.3d at 493.

While we conclude that Amendment 801 is not retroactive, we disagree with the government's argument that Amendment 801 cannot be applied retroactively because it is not included in the list of retroactive amendments in United

16

States Sentencing Guideline § 1B1.10(d). The District Court actually based its conclusion on this reasoning, but we cannot accept it. The government contends that to give retroactive effect to an amendment not listed in § 1B1.10(d) would conflict with the congressional intent to give the Sentencing Commission the authority to decide retroactivity. But the Commission's authority from Congress under 28 U.S.C. § 994(u) to determine whether amendments should be given retroactive effect is only implicated when motions for resentencing are brought under 18 U.S.C. § 3582(c)(2). *See* U.S. Sent'g Guidelines Manual § 1B1.10 cmt. background (U.S. Sent'g Comm'n 2018). Thus, the Commission's list of retroactive amendments in § 1B1.10(d) is only relevant when a defendant brings a motion for a resentencing under § 3582(c)(2) "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2); *see also* U.S. Sent'g Guidelines Manual § 1B1.10(a)(1) (U.S. Sent'g Comm'n 2018). When a petitioner seeks relief under § 2255 or § 2241, the analysis is different from § 3582(c)(2). *See Marmolejos*, 140 F.3d at 491; *United States v. Armstrong*, 347 F.3d 905, 908–09 (11th Cir. 2003).

We also note that our conclusion regarding the effect of Amendment 801 is in accord with two of our sister circuits who have reached this conclusion, albeit briefly in non-precedential opinions. *United States v. Mullins*, 748 F. App'x 795, 801 (10th Cir. 2018) (finding Amendment 801 to be substantive because "it overruled our existing precedent and revised the enhancement's language, not just the language of the commentary"); *United States v. Garcia*, 654 F. App'x 972, 975 n.2 (11th Cir. 2016) ("[E]ven if the amendment were in effect,

17

we would consider it a substantive amendment that does not apply retroactively.").

Amendment 801 imposed a substantive change to the Guidelines themselves. It did not clarify the previous Guideline. The Amendment had the purpose and effect of narrowing the scope of the enhancement, making the previous version of § 2G2.2(b)(3)(F) inconsistent with the amended version. We hold that Amendment 801 effected a substantive change to the Guidelines, and therefore does not apply retroactively. As a result, Prophet's argument that he is entitled to resentencing under *Marmolejos* fails, so he is not entitled to be resentenced.

## IV.

For these reasons, we will affirm the District Court's denial of Prophet's motion to vacate and petition for habeas relief.